UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

LAMAR ADVERTISING SOUTHWEST,
INC.,

    Plaintiff,

v.                                                                   Civ. No. 21-230 GJF/CG

GRANDVIEW REALTY, LLC, and
SMITH AND AGUIRRE
CONSTRUCTION, Inc.,

    Defendants.

**MEMORANDUM OPINION AND ORDER
ON DEFENDANTS' MOTION TO DISMISS**

THIS MATTER is before the Court upon Defendants' Motion to Dismiss for Failure to State a Claim ("Motion"). ECF 5. Now fully briefed, *see* ECFs 11 (response), 12 (reply), the Motion seeks dismissal of Plaintiff's claim for property destruction and its demand for punitive damages. Mot. 2. The Court held oral argument on the Motion on October 27, 2021. For the reasons set forth below, the Court will **DENY** the Motion.

**I.    BACKGROUND**

Plaintiff claims that "[i]n January of 2021 [Defendant] Grandview instructed [Defendant] Smith and Aguirre Construction] to remove [Plaintiff's] four billboard structures, breaching [Plaintiff and Defendant Grandview's] lease agreements, and causing substantial damage to [Plaintiff's] property." ECF 1 (Plaintiff's Complaint) ¶ 1. Invoking the Court's "subject matter jurisdiction pursuant to 28 U.S.C. § 1332," Plaintiff seeks "damages flowing from [Defendants'] breach of contract and destruction of property." ¶¶ 1-7.

**A. The Complaint**

In relevant part, Plaintiff's Complaint specifically states the following:[1]

1. [Plaintiff] holds valid sign location leases permitting [it] to erect and maintain billboards on property located adjacent to Interstate 25 near Las Cruces and owned by [Defendant] Grandview …

10. The [four] Leases [signed by Plaintiff and Defendant Grandview on May 24, 2019] have three-year terms commencing on June 1, 2019. The Leases [which are attached, and incorporated into, the Complaint, *see* ¶7, ECFs 1-2 through 1-5 (Ex. A-D)] provide for combined annual rent of $5,500 payable in advance each year.

12. The Leases state that "[a]ll structures, equipment and materials placed on the premises by [Plaintiff] or its predecessor shall remain property of [Plaintiff]" and that "All such permits and any non-conforming rights pertaining to the premises shall be property of Lessee." Ex. A-D, ¶ 5.

14. The Leases provide: "[Defendant Grandview] agrees to indemnify [Plaintiff] from any and all damages, liability, cost and expenses, including attorney's fees, resulting from any inaccuracy in or nonfulfillment of any representation, warranty, or obligation of [Defendant Grandview] herein." Ex. A-D at ¶ 10.

22. In October of 2020, [Defendant] Grandview disclosed that it was planning to develop the property, and in emails on October 2 and 8, 2020, Mr. [Kevin] Creason [the alleged sole member of Defendant Grandview] proposed that the parties negotiate a "fair settlement to terminate the leases early."

23. On November 24, 2020, however, [Defendant] Grandview notified [Plaintiff] that it intended to develop the property and would not honor the Leases. [Defendant] Grandview again acknowledged that the Leases signed in 2019 did not contain any express provision for early termination of the Leases by [Defendant] Grandview for property development.

24. [Plaintiff] promptly objected to [Defendant] Grandview's threats to breach the Leases.

25. On December 16, 2020, [Plaintiff] also notified [Defendant] Smith and Aguirre Construction that [Plaintiff] had Sign Location Leases located on the Grandview property, and warned [Defendant] Smith and Aguirre not to disturb or destroy the billboards.

26. Despite [Plaintiff's] objections and warnings, on or about January 28, 2020, [Defendant] Smith and Aguirre Construction, acting at the direction of

---

[1] For ease of reference, paragraphs quoted in this section contain the Complaint's original numbering.

[Defendant] Grandview, disassembled and removed [Plaintiff's] signs from their locations.

27. Defendants caused substantial damage to the sign structures.

28. Defendants' removal of the signs also destroyed the associated permits and nonconforming rights pertaining to the premises defined in the Leases.

### COUNT I (Breach of Contract)

31. Plaintiff incorporates by reference the foregoing allegations.

32. The Leases are valid contracts between [Defendant] Grandview and [Plaintiff].

34. [Defendant] Grandview breached the express and implied terms of the Leases by causing [Plaintiff's] signs to be removed from the leased premises before the expiration of the Leases, damaging the sign structures, and destroying the associated permits and non-conforming rights.

35. [Plaintiff's] damages include the replacement value of its destroyed property including the sign structure and related permits and non-conforming rights in the amount of $80,000, the loss of rental income associated with the signs in the amount of $70,000 and additional damages to be proved at trial.

### COUNT II (Destruction of Property)

38. Plaintiff incorporates by reference the foregoing allegations.

39. [Plaintiff] owned and owns the signs and structures located on the premises identified in the Leases.

40. [Plaintiff] had the right to place and maintain the signs and structures on the leased premises for the duration of the Leases.

41. Defendant Grandview and Defendant Smith and Aguirre knew that [Plaintiff] owned the signs and structures.

42. Defendant[] Grandview and Defendant Smith and Aguirre had knowledge of the Leases and their terms.

43. Defendants deliberately and intentionally removed, damaged and destroyed signs and structures owned by [Plaintiff] and located on the leased premises. Defendants further deliberately destroyed the permits and non-conforming rights attached to the leased premises.

44. [Plaintiff] was damaged by Defendants['] intentional destruction of its property.

45. Defendants' actions were malicious, willful, reckless and wanton.

ECF 1 at 1-6.

In light of these allegations, Plaintiff seeks relief for "[a]ll damages suffered as a result of" both Defendant Grandview's breach of contract and Defendants' destruction of Plaintiff's property. *Id.* at 6. In addition, Plaintiff requests "[p]unitive damages" and "[c]osts and reasonable attorney's fees." *Id.*

### B. Defendants' Motion

In May 2021, approximately two months after Plaintiff filed its Complaint, Defendants filed the instant Motion, which "request[s] that the Court [1] dismiss the second cause of action for destruction of property[] and [2] strike or dismiss the demand for punitive damages." Mot. 11.

## II. ISSUES

The main issues raised by Defendants' Motion are whether (1) Plaintiff has stated a valid claim for conversion and (2) Plaintiff's breach of contract claim alleges sufficient facts to support an award of punitive damages. Mot. 2-11.

### A. Defendants' Primary Arguments

Defendants argue that Plaintiff has not stated a valid claim for conversion because

(1) "the face of the complaint [shows] that [Defendant] Grandview was *entitled* to remove the billboards," Mot. 8-9 (emphasis added) (citing *Reagan Nat. Advert. of Austin, Inc. v. Hazen*, 2008 WL 2938823, at *8 (Tex. App. July 29, 2008));[2]

(2) "billboards are removable without *material injury* to themselves," *id.* at 4-6 (emphasis added) (quoting *Maxwell Co. v. Galloway Twp.*, 679 A.2d 141, 145 (N.J. 1996));[3]

---

[2] *See Reagan*, 2008 WL 2938823, at *8-9 (observing—in an appeal over whether a defendant "met his summary-judgment burden as to his attorney-immunity defense"—that removing billboards in Texas is authorized when "a tenant's property is *abandoned* or *constitutes a trespass* on the landowner's property" (emphasis added) (citing Tex. Prop. Code Ann. § 93.002(e) (West 2007); Tex. Civ. Prac. & Rem. Code Ann. § 80.002 (West 2005))).

[3] *See Maxwell*, 679 A.2d at 145-48 (holding that "traditional wooden billboards" "fall under the tax exemption of N.J.S.A. 54:4-1(a)" because—under New Jersey's tax code's "narrow definition of 'material injury:'" "physical damage to the personal property sufficient to *destroy its utility*"—such billboards "can be removed without being

4

(3) Plaintiff "has not alleged facts sufficient" to plausibly suggest that "its signs suffered damage above and beyond being [reasonably and prudently] disassembled;" *id.* at 6-7, Reply 5-6 (citing *Smith v. City of Chicago*, 143 F. Supp. 3d 741, 761-62 (N.D. Ill. 2015));[4] and

(4) Plaintiff's "alleg[ation] that its permits and nonconforming rights were 'destroyed' . . . . is duplicative of the contract claim," Mot. 7-8; Reply 7-8 (citing *Anderson Living Tr. v. ConocoPhillips Co., LLC*, 952 F. Supp. 2d 979, 1037 (D.N.M. 2013)).[5]

In addition, Defendants assert that "[Plaintiff] has not alleged facts that give rise to the plausible inference that Defendant Grandview is liable for punitive damages based on the alleged breach of contract." Mot. 10-11.

### B. Plaintiff's Response

Plaintiff insists that it has "state[d] a claim for conversion" by alleging that Defendants (1) intentionally and without authorization (2) "disassembled and removed [Plaintiff's] signs" and thereby "damaged[] and materially altered" these outdoor advertising trade fixtures (and their "related permits"). Resp. 1-7. Plaintiff contends that such actions amount to conversion under New Mexico law because they "*constitut[e] [1] an unauthorized and [2] injurious use of*

---

materially injured" (emphasis added) (quoting N.J.A.C. 18:12-10.1)); *see also id.* at 146 (finding that "[a] [wooden] billboard's utility is not destroyed when it is removed" because it is not "irreparably damaged"—as "[a]pproximately 80% of a [wooden] billboard's support structure is *salvageable* on removal" (emphasis added)).

[4] *See Smith*, 143 F. Supp. 3d at 761-62 (concluding that plaintiffs did not "state a [valid] claim [for] … trespass to chattels" under Illinois law because—although plaintiffs allege that officers frisked plaintiffs and "took their personal belongings, such as money and keys … [and] threw [these items] to the ground"—plaintiffs "failed to sufficiently allege how the police officers' conduct harmed or diminished their personal belongings").

[5] *See Anderson*, 952 F. Supp. 2d at 1037-38 (concluding that "the parties' contractual duties, *as the leases define those obligations*, preclude the [p]laintiffs' causes of action that sound in tort" (emphasis added)); *see also Elliott Indus. v. BP Am. Prod. Co.*, 407 F.3d 1091, 1116 (10th Cir. 2005) (observing that "[t]he rule in New Mexico is that 'the concept of freedom of contract and notions of contractually assumed duties and liabilities can act to limit general tort liability in *certain circumstances* when *limited liability is expressly bargained for*'" (quoting *State ex rel. Udall v. Colonial Penn Ins. Co.*, 812 P.2d 777, 785 (N.M. 1991))); *id.* (observing that Tenth Circuit properly precluded "a [New Mexico] negligence action … for failure to make rental payments [because of] a provision in the contract that limited liability for failure to make such payments" and noting that, in New Mexico, "no tort duty can be imposed on a party where that party's *same duties* and rights are *specifically defined* by contract" (emphasis added) (quotation omitted) (citing *Isler v. Texas Oil and Gas Corp.*, 749 F.2d 22-24 (10th Cir. 1984))).

*[Plaintiff's personal] property.*" *Id.* at 4 (emphasis in original) (quoting *Muncey v. Eyeglass World, LLC*, 289 P.3d 1255, 1262 (N.M. Ct. App. 2012)) (citing Restatement (Second) of Torts § 226).

In response to Defendants' arguments regarding the conversion claim, Plaintiff asserts the following:

(1) "the express term of the Leases[] grant[ed] [Plaintiff] the right to keep its signs on [Defendant Grandview's] property through May of 2022," Resp. 8-11;

(2) "[w]hether [Plaintiff's] signs were damaged by Defendants[] [and] the extent of that damage … [are] fact questions that cannot be resolved on [such] a motion to dismiss," *id.* at 5-7

(3) the allegation that Defendants, intentionally and without authorization, "*disassembled* and *removed* [Plaintiff's] signs" gave Defendants "fair notice" that they allegedly "injurious[ly] use[d]" (e.g., "damaged," "materially altered," or "destroyed") Plaintiff's billboards and related permits, *id.* at 1-8 (emphasis added); and

(4) "Defendants do not cite any authority for the assertion that their acts can only be a breach of contract." *id.* at 7-8.

Finally, Plaintiff argues that its breach of contract claim permits punitive damages because (1) it alleges that Defendants "removed and destroyed [Plaintiff's] signs and permits" in pursuit of Defendants' own business interest and (2) such allegations amount to "deliberate bad faith conduct that . . . . violates community standards of decency." *Id.* at 11-12 (citing *Bogle v. Summit Inv. Co., L.L.C.*, 107 P.3d 520, 530 (N.M. Ct. App. 2005)).

## III. APPLICABLE LAW

### A. General Pleading Standard

"In an ordinary civil action, the Federal Rules of Civil Procedure require only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). In other words,

"the complaint must say enough to give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005)). Otherwise, a court may dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

"To survive a Rule 12(b)(6) motion," *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020), a claim for relief must "contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1195 (10th Cir. 2018) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012)). Although "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, … it does not unlock the doors of discovery[6] for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Consequently, "'legal conclusions' as well as '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,'" are not "entitled to the assumption of truth." *Alpenglow,* 894 F.3d at 1195 (quoting *Iqbal*, 556 U.S. at 678-79).

A court must, however, "'assume the veracity' of the well-pleaded factual allegations 'and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). In other words, the "factual content [must] allow[] the court to draw the

---

[6] The Court notes that "the doors of discovery" have already been unlocked in this case. *See* ECFs 13 (parties' Joint Status Report and Provisional Discovery Plan, which also "request[ed] a settlement conference in April of 2022"), 14 (clerk's minutes noting that, although the instant Motion was pending, the parties were nevertheless "ready to proceed" with discovery), 15 (scheduling order, requiring discovery to be concluded by February 10, 2022), 17-19 (parties' certifications of their Rule 16 initial disclosures), 20 (Plaintiff's certification of service of its interrogatories and requests for production on Defendants), 24 (Defendant Grandview's certificate of service of its interrogatories and requests for admission on Plaintiff).

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B. The Tort of Conversion

"In cases arising under diversity jurisdiction, the federal court's task is … simply to 'ascertain and apply the state law.'" *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007) (quoting *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Specifically, the federal court must "apply the substantive laws of the forum state," *New York Life Ins. Co. v. K N Energy, Inc.*, 80 F.3d 405, 409 (10th Cir. 1996), by "follow[ing] the most recent decisions of the state's highest court." *Wade*, 483 F.3d at 665-66 (citing *Wankier*, 353 F.3d at 866). And "[w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do." *Id.* at 666 (quoting *Wankier*, 353 F.3d at 866).[7]

In New Mexico, the tort of "[c]onversion has been defined as '[1] the unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights, [2] acts constituting an *unauthorized and injurious use of another's property*, or [3] a wrongful detention after demand has been made." *In re Venie*, 395 P.3d 516, 526 (N.M. 2017) (emphasis added) (quoting *In re Yalkut*, 176 P.3d 1119, 1126 (N.M. 2008)). Although this tort "require[s] intentional wrongdoing," *In re Yalkut*, 176 P.3d at 1126, New Mexico courts have never "purported to provide a comprehensive definition" of all the "different types of conversion." *Case Credit Corp. v.*

---

[7] In making such a prediction, the federal court may "seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Id.* (internal quotation marks and citations omitted). But the federal court "must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently." *Stoner v. New York Life Ins. Co.*, 311 U.S. 464, 467 (1940). In addition, if the Tenth Circuit has "rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit . . . unless an intervening decision of the state's highest court has resolved the issue." *Wankier*, 353 F.3d at 866 (citations omitted).

8

*Portales Nat'l Bank*, 966 P.2d 1172, 1175 (N.M. 1998) (Minzner, J., dissenting) (observing that the Restatement (Second) of Torts § 223 (1965) "list[s] seven ways by which conversion may be committed"). New Mexico courts, however, have, looked to the Restatement (Second) of Torts to further explain "[t]he elements of the tort of conversion." *Nosker v. Trinity Land Co.*, P.2d 803, 808 (N.M. Ct. App. 1988) (citing Restatement (Second) of Torts § 237 (1965)).[8]

The Restatement (Second) of Torts instructs that "[a] conversion may be committed by intentionally," § 223 (Ways of Committing Conversion), *inter alia*, "destroy[ing] a chattel[9] or so materially alter[ing] its physical condition as to change its identity or character." § 226 (Conversion by Destruction or Alteration). Such "injurious use of another's property," *In re Venie*, 395 P.3d at 526, if unauthorized, "subject[s] [one] to liability for conversion," § 226.

### C. Punitive Damages

In New Mexico, "[p]unitive damages are awarded not to compensate a plaintiff for injury or loss suffered but to penalize a defendant for particularly egregious, wrongful conduct." *Faber v. King*, 348 P.3d 173, 179 (N.M. 2015) (citing Restatement (Second) of Torts § 908). "[T]he

---

[8] *See also Morris v. Giant Four Corners, Inc.*, __ P.3d__, No. S-1-SC-37997, 2021 N.M. LEXIS 33, 2021 WL 3046715, at *6 (N.M. Jul. 19, 2021) (observing that "New Mexico has adopted the general definition of negligent entrustment [of chattel] from the Restatement (Second) of Torts" and that, although "the Restatement is merely persuasive authority," it is "*entitled to great weight*" (emphasis added) (quotations omitted)); *Muncey v. Eyeglass World, LLC*, 289 P.3d 1255, 1262 (N.M. Ct. App. 2012) (observing that New Mexico's "Supreme Court [has] adopted the Restatement's measure of damages for conversion" (citing *Frank Bond & Son, Inc. v. Reserve Minerals Corp.*, 335 P.2d 858, 861 (1959); Restatement (First) of Torts § 927 (1939))).

[9] *See* BLACK'S LAW DICTIONARY FREE ONLINE LEGAL DICTIONARY 2ND ED., https://thelawdictionary.org/ (last accessed on Sept. 28, 2021) (defining chattel as "[a]n article of personal property" and defining personal property as "excluding any real estate property" but "includ[ing] tangible and intangible assets of an individual"). Although New Mexico has not expressly addressed whether a billboard is personal property, other state courts have concluded that it is. *See, e.g., City of Wichita v. Denton*, 294 P.3d 207, 217-19 (Kan. 2013) (collecting cases); *Outdoor Sys. Advert. Inc. v. Korth*, 607 N.W.2d 729, 732 (Mich. App. 1999) ("find[ing] that plaintiff owned the billboards, that the billboards were trade fixtures and, consequently, were the personal property of plaintiff"); N.M. Stat. Ann.§ 67-12-6 (1978) (stating that "outdoor advertising" is "deemed a trade fixture"). In addition, the lease contracts referred to in Plaintiff's Complaint state that "[a]ll structures, equipment and materials placed on the premises by [Plaintiff] shall remain the property of [Plaintiff]" and that "[a]ll such permits and any non-conforming rights pertaining to the premises shall be property of [Plaintiff]." ECFs 1-2 through 1-5 at ¶ 5. Finally, all parties to this lawsuit expressly agree that Plaintiff's billboards are its "personal property." *See* Compl. ¶ 29; Resp. 4-6; Mot. 3, 5-6.

award of punitive damages requires a culpable mental state," such as when a party "intentionally or knowingly commits wrongs" or "is utterly indifferent to the plaintiff's rights" (e.g., through "reckless and wanton conduct"). *Yedidag v. Roswell Clinic Corp.*, 346 P.3d 1136, 1152 (N.M. 2015).

Furthermore, "[New Mexico] case law clearly establishes that punitive damages may be recovered for breach of contract when the defendant's conduct has been sufficiently malicious, oppressive, fraudulent, or committed recklessly with a wanton disregard for the plaintiff's rights." *Bogle v. Summit Inv. Co., L.L.C.*, 107 P.3d 520, 530 (N.M. Ct. App. 2005) (citing *Paiz v. State Farm Fire & Cas. Co.*, 880 P.2d 300, 307 (N.M. 1994)). "Also, when the breaching party intends to inflict harm on the non-breaching party or engages in conduct which violates community standards of decency, punitive damages are appropriate." *Id.* (citing *Constr. Contracting & Mgmt., Inc. v. McConnell*, 815 P.2d 1161, 1165 (N.M. 1991)).[10] Absent such circumstances, however, "[a]n intentional breach by itself ordinarily cannot form the predicate for punitive damages." *Id.*

In tort cases, however, punitive damages may be awarded not just for "malicious," "reckless," "wanton," or "fraudulent" conduct—but also for "willful" or "bad faith" conduct. UJI 13-1827, NMRA (defining willful conduct as "the intentional doing of an act with knowledge that harm may result"); *see also Akins v. USW, Local 187*, 237 P.3d 744, 752 (N.M. 2010) (observing that "most intentional tort cases provide at least the potential for punitive damages, because intentional conduct is 'willful'").

---

[10] *See also Romero v. Mervyn's*, 784 P.2d 992, 1001 (N.M. 1989) (observing that "[o]verreaching, malicious, or wanton conduct" justifying punitive damages is "inconsistent with legitimate business interests, [and] violates community standards of decency"); Uniform Jury Instructions (UJI) 13-861, NMRA (providing for punitive damages in contract cases when a party's "conduct in committing the breach was [malicious], [reckless], [wanton], [oppressive], [or] [fraudulent] [rather than being legitimate or justified in the circumstances]" (brackets in original)); *c.f.* UJI 13-1827, NMRA (providing for punitive damages in tort cases when a party's conduct was "[malicious], [*willful*], [reckless], [wanton], [fraudulent] [or] [*in bad faith*]" (emphasis added) (brackets in original)).

## IV. ANALYSIS

The Complaint alleges that the signs were removed on January 28, 2021. Compl. 1.[11] This lawsuit was filed less than seven weeks later. Such a compressed interim between an alleged occurrence giving rise to certain causes of action and the filing of a lawsuit invoking them poses a challenge to any attorney's ability to include in the complaint sufficient factual detail to comply with *Iqbal* and *Twombley*. And that certainly was the case here. After oral argument, the Court now well understands the difficulty that Plaintiff's counsel faced in gathering and evaluating the strength and significance of the facts surrounding the removal of the subject signs. That the Complaint in this case included such thin and summary allegations about how and to what extent the signs and their supporting structures were damaged and destroyed is understandable, but it is also a byproduct of Plaintiff's haste in filing this case. The Court is left to wonder how much more fulsome the factual details might have been had the Complaint been filed (or amended) even a few months later.

What is more, as the Court learned during oral argument, there were factual details available even by the time the Complaint was filed that could have been—but were not— included in the Complaint that likely would have forestalled or obviated a significant portion of the instant motion. But the Court is constrained to evaluate the four corners of the Complaint that was filed, not the one that could have been filed. The Court's task is merely to decide whether the factual allegations supporting Count II, however thin and summary they may be, nonetheless satisfy the federal pleading standard. This is a particularly close question with which the Court has wrestled both *in camera* and in open court. For the reasons that follow, however, the Court holds that the

---

[11] Although paragraph 26 of the Complaint states that these signs were removed on January 28, *2020*, Plaintiff's counsel clarified at oral argument that January 28, 2020, is a typographical error that should instead read January 28, *2021*.

11

factual allegations in the Complaint are sufficient—but just barely—to withstand the instant Motion.

### A. Plaintiff's Complaint States a Valid Claim for Conversion

Plaintiff's Complaint "contain[s] enough allegations of fact, taken as true," *Alpenglow*, 894 F.3d at 1195, to "allow[] the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that Defendants are liable for conversion under New Mexico law. In other words, Plaintiff's Complaint sets forth a short and plain statement of "acts constituting [both] an *unauthorized* and *injurious* use of [Plaintiff's] property." *In re Venie*, 395 P.3d at 526 (emphasis added).

1. Unauthorized Use of Billboards

The Complaint not only states that Defendants failed to obtain Plaintiff's express permission to disassemble and remove them (¶¶ 22-23, 25)—but that Plaintiff expressly *forbade* Defendants from doing so (¶¶ 24-26). Moreover, such factual allegations and those regarding the lease agreements (¶¶ 7, 10, 12, 32, 34, 39-43), when taken as true, allow the Court to reasonably infer that Plaintiff had not somehow inadvertently or implicitly authorized the billboards' removal—e.g., by "abandon[ing]" the billboards or somehow having them "trespass on [Defendant Grandview's] property," *Reagan*, 2008 WL 2938823, at *8. [12] Thus, Plaintiff's factual allegations

---

[12] Defendants argue that it is "apparent on the … face" of Plaintiff's Complaint that they "acted lawfully to abate a trespass." Mot. 8-9. Defendants therefore urge the Court to hold that that they were "*entitled* to remove the billboards." *Id.* (emphasis added) (suggesting that such an entitlement "establish[es] [a valid] affirmative defense"). Conversely, at oral argument, Plaintiff cited to *State v. Ashley*, 772 P.2d 377 (N.M. Ct. App. 1989) for the proposition that any such "self-help" by Defendants is not an *entitlement*, but rather a *tort*—particularly when such self-help aids in the violation of the lease agreement. *See Ashley*, 772 P.2d at 380-81 (observing that, under the Restatement (Second) of Property (1977), a landlord commits a tort by "resort[ing] to self-help to recover possession of the leased property" from "a tenant improperly holding over after the termination of the lease"—and that, although no New Mexico court has expressly "adopt[ed] [such a] doctrine," this sort of landlord self-help at least appears to be tortious in New Mexico "*when the landlord breaches the peace*" (emphasis added) (quoting Restatement § 14.2(1)) (citations omitted)). In the absence of factual development and potential further motion practice, however, the Court cannot hold as a matter of law that Defendants were entitled to remove the billboards to abate a potential trespass. Consequently, at the pleading stage, the Court cannot dismiss any portion of the Complaint on Defendants' theory that they engaged in lawful self-help.

allow the reasonable inference that Defendants were not authorized (or "entitled," Mot. 8-9) to remove Plaintiff's billboards.

    2. <u>Injurious Use of Billboards</u>

Regarding Defendants' alleged injurious use of Plaintiff's billboards, the Complaint states that Defendants "*disassembled* and *removed* [Plaintiff's] signs from their locations," ¶¶ 1, 26, 34 (emphasis added)—thereby "caus[ing] substantial damage to the sign structures" and "destroy[ing] the associated permits and nonconforming rights." ¶¶ 27-28, 34-35, 43; *see also* ¶ 35 (stating that Plaintiff suffered $80,000 billboard-related damages and $70,000 in lost income). Such actions might not, for instance, amount to "material injury" to wooden billboards in *1996* under *New Jersey's tax code* (and its "narrow definition" of that term: damage "sufficient to destroy its utility"). *Maxwell*, 679 A.2d at 145-48 (quoted in Mot. 4-5). But such actions clearly amount to greater property damage than, say, throwing "money and keys … to the ground." *Smith*, 143 F. Supp. 3d at 761-62 (addressing trespass to chattels under Illinois law, cited in Reply 5-6). In any event, such actions, taken as true, allow the Court to reasonably infer that Defendants' actions "constitute[d] an … *injurious use* of [Plaintiff's] property" under New Mexico law. *In re Venie*, 395 P.3d at 526 (emphasis added); *see also* Restatement (Second) of Torts § 226 (providing that conversion may be committed by intentionally "destroy[ing]" another's personal property or "so materially alter[ing] its physical condition as to change its identity or character").[13]

Defendants emphasize the lack of clarity and factual detail in the Complaint's description

---

[13] Although the heading of Count II states "Destruction of Property," both Plaintiff's Complaint and particularly Count II "say enough to give [Defendants] fair notice" of (1) "what [P]laintiff's [Count II] claim is" (i.e., a claim for the tort of conversion under New Mexico law) and (2) "the grounds upon which it rests" (i.e., not *only* Defendants' "destruction"—but also their "damaging"—of Plaintiff's property due to their disassembly and removal of Plaintiff's billboards). *Tellabs*, 551 U.S. at 319; *see* Compl. ¶¶ 1, 26-28, 34-35, 43; *see also* Fed. R. Civ. P. 8(a)(2) (requiring only a "short and plain statement of the claim"); *Iqbal*, 556 U.S. 662, 678 (observing that "Rule 8 marks a notable and generous departure from the *hypertechnical*, code-pleading regime of a prior era" (emphasis added)).

of the extent to which Defendants allegedly "injuriously used" Plaintiff's billboards:

> It is impossible to tell from … [Plaintiff's] allegation [that Defendants' disassembly and removal of Plaintiff's signs "caused substantial damage to the sign structures," Compl. ¶ 27] whether [Plaintiff] is alleging that its signs suffered damage *above and beyond* being disassembled [and removed]. To the extent Lamar *is* making that allegation, it has not alleged facts sufficient to make this allegation plausible on its face. … [Plaintiff] has not alleged that Defendants did anything in the course of removing its billboards that a reasonably prudent contractor would not have done in like circumstances[.] … Nor has [Plaintiff] identified *which pieces* of the billboard it believes were damaged.

Resp. 6-7 (second emphasis in original). The Court agrees that Plaintiff has alleged no facts that allow the Court to reasonably infer that any of the billboards' *individual parts*—which, as Defendants assert, are "designed to be disassembled [and] removed," *id.* at 6—suffered any physical deformities or disfigurements (e.g., dents, scratches, or tears) by being disassembled and removed. *See* Compl. ¶¶ 7-45; *see also* Reply (colorfully noting an absence of any allegations that Defendants, for instance, "set [Plaintiff's] signs on fire or hacked them to pieces").[14]

In seeking to justify the Complaint's dearth of details regarding any physical damage to the billboards' signs and structures—i.e., any damage "above and beyond" the billboards' mere disassembly and removal—Plaintiff cites two cases from outside of this District. Resp. 3 (citing *Travelers Com. Ins. Co. v. Hansen*, No. 16-CV-01123-LB, 2016 WL 1745818, at *2–3 (N.D. Cal. May 3, 2016); *Cameron v. Travelers Home & Marine Ins. Co.*, No. CIV-12-438-D, 2012 WL 5266172, at *2 (W.D. Okla. Oct. 23, 2012)). In the Court's view, both of those cases included factual details that put the respective defendants (and courts) on significantly better notice of the manner, mechanism, and extent of the damage alleged than does the Complaint here. To prove the point, the Court invites the reader to substitute into those complaints the bare factual allegation

---

[14] Aside from containing no factual allegations suggesting that the billboards were damaged "above and beyond" their (perhaps extremely careful and professional) disassembly and removal, the Complaint also lacks any facts suggesting, for instance, (1) where the billboards are now located, (2) who has possession of them, and (3) whether repairs are necessary before the billboards can be redeployed elsewhere.

14

that the instant Complaint essentially features: "Defendant damaged Plaintiff's property." How different those complaints then would read, for their readers would be deprived of the additional details that (1) the Oklahoma house suffered water damage to such an extent that the house could not be satisfactorily repaired to its original condition, *see* Complaint at ¶ 4, *Cameron*, No. CIV-12-438-D (W.D. Okla.), or (2) the California house had one of the neighbor's trees collapse on it with the resulting repair bill at $181,000 and counting, *see* Complaint at ¶¶ 16-19, *Hansen*, No. 16-CV-01123-LB (N.D. Cal.). It is enough to say that the defendants in those cases better understood the property damage claims brought against them than the Defendants do here.

To state a plausible claim for conversion under New Mexico law, however, Plaintiff need not show that the billboards suffered some sort of damage "*above and beyond*" their disassembly and removal. Instead, Plaintiff must merely show that the billboards were *used* in a manner that was "injurious," *In re Venie*, 395 P.3d at 526—e.g., in a manner that "materially alter[ed] [their] physical condition [so] as to change [their] identity or character," Restatement § 226. And *disassembling and removing* profit-generating billboards next to a major Interstate Highway— even if done with the utmost care and professionalism—still (1) "materially alters [the billboards'] physical condition" and (2) "change[s] [their] identity," particularly to something that cannot meaningfully generate advertising revenue (at least until they are reassembled and reinstalled with appropriate permits and rights). In other words, Defendants' alleged disassembly and removal of Plaintiff's billboards constitute an action that is *itself* an "injurious use" of Plaintiff's personal property—regardless of whether Defendants inflicted *additional* injury upon the billboards. *In re Venie*, 395 P.3d at 526. Thus, although Plaintiff's Complaint may not be a pristine model of clarity and detail, it nevertheless sufficiently—albeit barely—alleges specific "actions [by Defendants that] precisely match the definition of conversion." *Id.*

### 3. Contractual and Tort Liability

Finally, the Court observes that this case does not present one of those "certain circumstances" in which the parties have "act[ed] to *limit* general tort liability" by contractually agreeing to a "*limited* liability [that] is expressly bargained for." *Elliott*, 407 F.3d at 1116. If anything, the parties' leases *expanded* Defendants' liability—and certainly did not relieve them of liability for an intentional, unauthorized, and injurious use of Plaintiff's property. *See* Compl. ¶ 14 (parties contractually agreeing that Defendant Grandview is liable for "any and all damages, liability, cost and expenses" associated with a breach of the contract (quoting Ex. A-D at ¶ 10)); ECFs 1-2 through 1-5 (entire lease agreements, which are incorporated into the Complaint); *see also Cobb v. Gammon*, 389 P.3d 1058, 1073 (N.M. Ct. App. 2016) (concluding that even a contract's "limitation of liability [did] not limit [a party's] tort liability for [negligent misrepresentation]"—as the contract "[did] not *alleviate* [the party's] duty to disclose material facts" and instead actually further "impose[d] a duty to do so" (emphasis added)). Thus, the Court concludes that the parties' contractual obligations do not preclude Plaintiff's cause of action under New Mexico law for the tort of conversion.

In sum, having "assume[d] the veracity of the well-pleaded factual allegations," the Court holds that Plaintiff's Complaint "plausibly give[s] rise to an entitlement to relief" for conversion under New Mexico law. *Alpenglow,* 894 F.3d at 1195 (quoting *Iqbal*, 556 U.S. at 679).[15]

---

[15] Defendants have raised the issue of subject-matter jurisdiction in their Motion. *See* Mot. 1 (asserting that Plaintiff cannot recover more than $75,000 for its contractual claim and that if the Court grants the instant motion, Defendants will "move to dismiss the entire case for want of subject matter jurisdiction"). The Court, however, has independently assessed whether the Complaint satisfactorily pleads an amount in controversy in excess of the $75,000 set forth in 28 U.S.C. § 1332. Even if the Court were to grant the Motion and deny Plaintiff an opportunity to amend, the remaining breach of contract claim still has alleged damages of at least $150,000, Compl. ¶ 35, a companion demand for punitive damages associated with the breach, *id.* at 6, and a request for attorney's fees that both sides acknowledged at oral argument arises from paragraph 10 of the lease agreements.

### B. Plaintiff's Complaint Includes a Valid Demand for Punitive Damages

As with "most intentional tort cases," Plaintiff's conversion claim appears to "provide at least the potential for punitive damages." *Akins*, 237 P.3d at 752. And Defendants do not ask this Court to conclude otherwise. *See* Mot. 10-11. Instead, Defendants ask the Court to conclude only that Plaintiff's *breach of contract* claim cannot support an award of punitive damages. *See id.* Because the Court is allowing Plaintiff's claims for conversion to survive dismissal—at least at the pleading stage—the Court will accord the same treatment to its demand for punitive damages.

The Court also concludes, however, that Plaintiff's contractual claim in its own right "plausibly give[s] rise to an entitlement to [punitive damages]." *Iqbal*, 556 U.S. at 679. This claim alleges that Defendants wrongly *disassembled* and *removed* four of Plaintiff's profit-generating billboard trade fixtures—and did so not just intentionally, but *without permission or authorization* and despite Plaintiff having expressly *forbade* such actions. *See* Compl. ¶¶ 7, 10, 12, 23-26, 28, 32, 34 (intentional, unauthorized use); ¶¶ 1, 26-28, 34-35 (injurious use). Although "[a]n intentional breach *by itself* ordinarily cannot form the predicate for punitive damages," *Bogle*, 107 P.3d at 530 (emphasis added), the Complaint alleges more than just an intentional breach of contract. Specifically, the Complaint alleges facts that, if true, allow the Court to reasonably infer that Defendants had the "culpable mental state" of being "utterly indifferent to [Plaintiff's] rights," *Yedidag*, 346 P.3d at 1152. *See* Compl. ¶¶ 23-30, 40 (alleging Defendants utterly disregarded "[Plaintiff's] objections and warnings" regarding its rights to not have Defendants "disturb or destroy the billboards"). If Defendants entirely disregarded Plaintiff's multiple, express, and written warnings—and did so by completely removing billboards that they may have had no right to remove (¶¶ 23-30, 40)—it is at least plausible that such actions amounted to an utter "disregard

17

for [Plaintiff's] rights," a "violat[ion] [of] community standards of decency," or conduct that could fairly be classified as "oppressive" or "reckless." *Bogle*, 107 P.3d at 530; UJI 13-861, NMRA.[16]

Consequently, at least at this stage, the Court will allow Plaintiff to preserve its demand for punitive damages not just for the conversion claim, but also for the contractual claim.

## V.  CONCLUSION

For the foregoing reasons, the Court holds that Plaintiff's Complaint sufficiently pleads both a valid claim for conversion and a valid demand for punitive damages.

**IT IS THEREFORE ORDERED** that the Defendants' Motion is **DENIED**.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*

---

[16] At oral argument, Plaintiff suggested that *State v. Ashley*, 772 P.2d 377 (N.M. Ct. App. 1989) supports Plaintiff's claim for punitive damages on the theory that self-help in aid of the violation of a lease agreement is tortious. *See Ashley*, 772 P.2d at 380-81 (observing that, under the Restatement (Second) of Property (1977), a landlord commits a tort by "resort[ing] to self-help to recover possession of the leased property" from "a tenant improperly holding over after the termination of the lease"—and that, although no New Mexico court has expressly "adopt[ed] [such a] doctrine," this sort of landlord self-help at least appears to be tortious in New Mexico "when the landlord breaches the peace" (quoting Restatement § 14.2(1)) (citations omitted)). Defendants, however, emphasized that this case is limited to those instances of self-help that involve breaches of the peace. The potential impact of *Ashley* on this case will need to await further factual development and motion practice. At the pleading stage, the facts are far from settled enough to dismiss any portion of the Complaint on Defendants' theory that they engaged in lawful self-help.