UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

LAMAR ADVERTISING SOUTHWEST,
INC.,

       Plaintiff,

v.                                                                        Civ. No. 21-230 GJF/CG

GRANDVIEW REALTY, LLC, and
SMITH AND AGUIRRE
CONSTRUCTION, Inc.,

       Defendants.

MEMORANDUM OPINION AND ORDER ON
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

THIS MATTER is before the Court upon Plaintiff's Motion for Attorney's Fees. ECF 41 ("Motion"). The Motion, now fully briefed, *see* ECFs 42, 47, 52, 53, requests that the Court award Plaintiff "attorney's fees and costs incurred in this action in the amount of $55,000." Mot. 7. The Court held oral argument on the Motion on May 10, 2022. *See* ECF 51 (clerk's minutes). The primary issues raised are (1) whether the parties' January 2022 settlement agreement and 2019 lease agreement entitle Plaintiff to attorney's fees and (2) if so, how much. *See* Mot. 1-7. For the reasons set forth below, the Court concludes that Plaintiff is entitled to $55,000 in attorney's fees under these agreements. The Court will therefore **GRANT** the Motion.

I.   BACKGROUND

A.  Plaintiff's Complaint

In March 2021, Plaintiff filed suit in this Court, claiming that "[i]n January of 2021 [Defendant] Grandview instructed [Defendant Smith and Aguirre Construction] to remove [Plaintiff's] four billboard structures, breaching [Plaintiff and Defendant Grandview's] [June 2019] lease agreements, and causing substantial damage to [Plaintiff's] property." ECF 1 at ¶ 1.

The Complaint sought relief for "[a]ll damages suffered as a result of" both Defendant Grandview's breach of contract and Defendants' destruction of Plaintiff's property, including "[p]unitive damages" and "[c]osts and reasonable attorney's fees." *Id.* at 6.

In May 2021, Defendants filed a motion to dismiss, requesting that the Court "dismiss [Plaintiff's] second cause of action for destruction of property and strike or dismiss the demand for punitive damages." ECF 5 at 11. After holding oral argument on that motion, the Court held that "the factual allegations in the Complaint [were] sufficient—but just barely—to withstand the [motion to dismiss]." ECF 26 at 11.[1]

### B. January 2022 Settlement Agreement

At a settlement conference on January 13, 2022, the parties agreed to settle the liability portion of the case. *See*, *e.g.*, ECF 38 (clerk's minutes from January 13, 2022, noting that "[t]he case settled"). Although the parties have yet to reduce the agreement to writing, they "reached a settlement pursuant to which Defendants would pay $145,000 to [Plaintiff] to settle the underlying claims while allowing [Plaintiff] to file a motion for attorney's fees." ECF 42 at 2 (Defendant's representation).[2] The parties have also agreed that the primary issues to be addressed in such a motion are (1) whether Plaintiff is entitled to any attorney's fees under the parties' underlying June

---

[1] *See also id.* (observing that "a byproduct of Plaintiff's haste in filing this case" was that the Complaint contained rather "thin and summary allegations about how and to what extent the signs and their supporting structures were damaged and destroyed"—allegations that presented the Court with "a particularly close question"). On January 7, 2022, after Defendants filed their answer and counterclaim, Plaintiff filed its own motion to dismiss, which the Court later denied as moot (in light of the parties' January 13, 2022, settlement). *See* ECFs 34, 37, 40.

[2] *See also* Mot. 1 n.1, 7 (Plaintiff's representation that "the parties' settlement agreement" was a "liability settlement" with "the parties agree[ing] that [Plaintiff] may petition the Court for its legal fees and costs in an amount up to $55,000"); ECF 41-6 at ¶ 4 (same); Recording of May 10, 2022, Oral Argument ("Recording") at 3:01-3:43 (same, with Plaintiff clarifying that, as part of the liability settlement, the parties "agreed to dismiss all of their claims").

2019 lease agreement [ECF 1-2[3] ("Agreement")]; and (2) if so, the amount of fees (up to $55,000)

that Plaintiff is entitled to.[4]

### C.  June 2019 Lease Agreement

The parties do not dispute that the lease agreement expressly states that Defendant

Grandview "leases to [Plaintiff]" certain premises for Plaintiff's "outdoor advertising structure[s]"

for "a term of Three (3) years commencing on June 1, 2019."  Agreement at 1.  The parties also

do not dispute that the lease agreement omitted any language expressly stating that Defendant

Grandview could terminate the lease early—e.g., language that "stat[ed] that [Defendant

Grandview] may terminate the billboard lease upon providing reasonable notice that it plans to

develop the property."  ECF 42 at 2-3; *see also* Mot. 3.  In addition, the parties do not dispute that,

"on or about January 28, 2021"—and over Plaintiff's objections—"[Defendant] Grandview

instructed [Defendant] S&A to dismantle Lamar's Billboards and place them into storage," which

Defendant S&A did.  ECF 42 at 5; *see also* Mot. 3.[5]  Finally, the parties do not dispute that ¶ 10

---

[3] There are actually four separate lease agreements corresponding to four separate parcels of land.  *See* ECFs 1-2 through 1-5.  But because these agreements are essentially identical (aside from the parcel descriptions), the Court refers to only one agreement [ECF 1-2] for ease of reference.

[4] *See* Recording at 3:42-4:07; 5:50-7:45; 21:20-50 (Plaintiff confirming these two issues remained for the Court to address); Mot. 3-8 (Plaintiff briefing these two issues); ECF 42 at 7-17 (Defendants briefing these two issues).  The parties, however, do not agree on precisely what factors the Court may consider in addressing whether Plaintiff is entitled to attorney's fees.  *See* Recording at 21:20-50 (Plaintiff expressing its understating that—because the "substantive claims" were settled—"substantive challenges to Contract" were not appropriate factors for the Court to consider in its attorney fee analysis); 43:55-46:30 (Defendants expressing their understanding that—despite there being a "binding settlement of all the claims" (which caused "the merits claims" to "no longer [be] before the Court")—a "mini-trial on the merits" was nevertheless an appropriate factor for the Court to consider in deciding whether to award fees).

[5] The parties, however, naturally dispute the *legal implications* of Defendant Grandview's actions.  Plaintiff, on one hand, contends that these actions amounted to a "breach of contract and interference with property" under New Mexico law.  Mot. 3; *see also* ECF 1 (Plaintiff's Complaint) at 5-7 (containing state law claims for breach of contract and conversion).  Defendants, on the other hand, contend that their actions were permissible "based on an oral or implied-in-fact agreement that *supplemented* the written leases."  ECF 42 at 12 (emphasis added).  The Court, however, does not determine whether Defendants are ultimately liable under Plaintiff's breach of contract or conversion claims.  The Court refrains from doing so because (1) such liability determinations are more properly addressed through summary judgment or trial proceedings—which the parties chose to forego by settling their claims; and (2) the Court's role in the instant dispute is only to enforce the parties' settlement agreement.

of this lease agreement states that Defendant Grandview "agrees to indemnify [Plaintiff] from *any and all* damages, liability, *costs and expenses, including attorney's fees*, resulting from *any* … nonfulfillment of *any*" of Defendant Grandview's "obligation[s]" "herein."  Agreement at ¶ 10 (emphasis added).

## II.  PARTIES' PRIMARY ARGUMENTS

### A.  Plaintiff's Contentions

Plaintiff contends that Defendant Grandview must indemnify Plaintiff in the amount of $55,000 because (1) "[a]s part of their [January 2022] liability settlement, the parties agreed that [Plaintiff] may petition the Court for its legal fees and costs in an amount up to $55,000;" (2) the parties' June 2019 lease agreement provides that Defendant Grandview will "indemnify [Plaintiff] from any and all … costs and expenses, including attorney's fees, resulting from any … nonfulfillment of any" of Defendant Grandview's lease agreement obligations; (3) "[Defendant] Grandview failed to fulfill [its lease agreement] obligation" to "allow Lamar to maintain its signs on the property for a three-year term;" and (4) Plaintiff has incurred at least $66,770.05 in "reasonable and necessary" attorney's fees and costs in "pursuing this legal action" that arose from Defendant Grandview's nonfulfillment of its lease agreement obligations.  Mot. 1-7 (quoting Agreement at ¶ 10).[6]

### B.  Defendant Grandview's Contentions

Defendant Grandview contends that it is not required to indemnify Plaintiff because the lease agreement (1) contains a "one-sided attorney's fees provision[]" that is "unconscionable on [its] face" and (2) "eliminates a key provision" that would have allowed Defendant Grandview to terminate the lease early, thus rendering the one-sided fee provision "unconscionable as applied."

---

[6] *See also* ECF 53 at 3 (representing that "[Plaintiff's] legal expenses through [the January 13, 2022] mediation total $66,770.05 ($65,448.84 in fees and $1,321.21 in costs)").

ECF 42 at 7-12 (citing, *inter alia*, *Peavy v. Skilled Healthcare Grp., Inc.*, 470 P.3d 218, 221-26 (N.M. 2020)).  Defendant Grandview also contends that it does not have to indemnify Plaintiff because Plaintiff has not "come forward with evidence" showing that Defendant Grandview failed to fulfill a lease agreement obligation.  *Id.* at 12-13.

Alternatively, Defendant Grandview contends that "[e]ven if the Court concludes that Lamar is entitled to recover attorney's fees, it should award substantially less than" $55,000.  *Id.* at 13-18.  Specifically, Defendant Grandview argues that "the Court should use Defendants' billing as a proxy for the amount of attorney time that was reasonably necessary in this case."  *Id.* at 13-16.  Defendants assert that, under this standard, the Court should award "no more than $12,000 ($300 an hour times 40 hours) for attorney time"—and thus not count the entire "186.9 hours of attorney time and 43.9 hours of paralegal time" that was billed to Plaintiff.  *Id.* at 13-16; ECF 52 at 1-5.[7]  Defendant Grandview further asserts that "the 66.4 hours of attorney time billed by Defendant could [nevertheless] support a[] [total] award of $19,920, plus gross receipts tax."  ECF 52 at 9.

Finally, Defendant Grandview contends that, in any event, it should not have to indemnify Plaintiff for several specific expenses.  *Id.* at 4-8.  First, it argues that it should not have to indemnify any expenses related to Defendants' Motion to Dismiss, including the following:

- $10,258.91    fees related to Defendants' Motion to Dismiss

- $2,718.45     fees related to hearing on Defendant's Motion to Dismiss.

---

[7] Although Defendants' counsel billed 66.4 hours for this case, he contends that "the 26.5 hours spent on the motion to dismiss" should not be counted because "the motion to dismiss was necessitated by [Plaintiff's] deficient filing." ECF 42 at 14-16.

*See* ECFs 42 at 14-15; 52 at 8.[8]  In addition, Defendant Grandview argues that it should not have to indemnify any of the $12,375.00 in associate attorney's fees because the associate's "$275 an hour [rate] is far too high" and the associate "did a significant amount of work on this case that was not deemed billable."  ECF 52 at 4-7.  Defendant Grandview then specifically disputes the following associate attorney fees:

- $1,859.23    researching motion to dismiss standards

- $1,690.94    attending settlement conference

- $1,097.63    researching Rule 408 and requests for admission.

ECF 52 at 4-7.[9]  Finally, Defendant Grandview disputes $282.63 in administrative fees.  *Id.* at 7-8.[10]

## III. APPLICABLE LAW

The Court's "'basic point of reference' when considering the award of attorney's fees is the bedrock principle known as the 'American Rule': Each litigant pays his own attorney's fees, win or lose, unless a statute or *contract* provides otherwise."  *Peter v. NantKwest, Inc.*, 140 S. Ct. 365, 370 (2019) (emphasis added) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U. S. 242, 252-253 (2010)).  "[S]ettlement agreements are contracts," *Walters v. Wal-Mart Stores, Inc.*, 703 F.3d 1167, 1172 (10th Cir. 2013), and "[a] trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it," *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993).  In addition, "[b]ecause settlement agreements are contracts, '[i]ssues involving the formation and construction of a purported

---

[8] These dollar amounts include the gross receipts tax rate in effect in May 2022 for Albuquerque: 7.8750 percent.  This is the same rate used by Plaintiff in its calculations.  *See*, *e.g.*, ECF 53 at 8.

[9] These dollar amounts include the 7.8750 percent gross receipts tax rate mentioned at *supra* note 8.

[10] This $282.63 amount likewise includes the same gross receipts tax rate mentioned at *supra* note 8.

settlement agreement are resolved by applying state contract law.'" *Walters*, 703 F.3d at 1172 (quoting *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004)); *see also Herrera v. Herrera*, 974 P.2d 675, 678 (N.M. Ct. App. 1999) (observing that "[a]ll settlement agreements are contracts and therefore are subject to contract law").

### A.  Applicable New Mexico Contract Law

The New Mexico Supreme Court has ruled that "a party can be considered bound by a settlement even if certain details are not worked out, if such details are not essential to the proposal" or if such details do not "change … the terms or purpose to be accomplished by the settlement." *Jones v. United Minerals Corp.*, 604 P.2d 1240, 1242 (N.M. 1979).  New Mexico courts also "recogniz[e]  and enforc[e] the strong policy of favoring settlement agreements." *Builders Contract Interiors, Inc. v. Hi Lo Indus.*, 134 P.3d 795, 798 (N.M. Ct. App. 2006).  In the federal courts, "a district court's decision to enforce a settlement agreement [is reviewed] for abuse of discretion." *Walters*, 703 F.3d at 1172 (also observing that "[a]n abuse of discretion" occurs when the decision was based on "an erroneous conclusion of law" or "clearly erroneous fact findings").

With regard to other contracts, such as lease agreements, New Mexico courts "do not use equitable principles to save a party from the circumstances it created." *Builders*, 134 P.3d at 798 (quotation omitted).  Thus, "[u]nless there is 'an *affirmative showing* of *mistake*, *fraud* or *illegality*,' 'the fact that some of the terms of [an] agreement resulted in a hard bargain or subjected a party to exposure of substantial risk, does not render a contract unconscionable.'" *Id.* (emphasis added) (quoting *Smith v. Price's Creameries*, 650 P.2d 825, 829 (N.M. 1982)).  Furthermore, "a party who executes and enters into a written contract with another" is "[g]enerally … presumed to know the terms of the agreement, and to have agreed to each of its provisions in the absence of

fraud, misrepresentation or other wrongful act of the contracting party." *Smith*, 650 P.2d at 829. Indeed, "[e]ach party to a contract has a duty to read and familiarize himself with its contents before he signs and delivers it, and if the contract is plain and unequivocal in its terms, each is ordinarily bound thereby." *Id.*[11]

In addition, a contract "is not substantively unconscionable merely by way of its one-sidedness." *Peavy v. Skilled Healthcare Grp., Inc.*, 470 P.3d 218, 222 (N.M. 2020).[12]  Rather, "[s]ubstantive unconscionability is found where the contract terms themselves are 'illegal, contrary to public policy, or grossly unfair.'" *State ex rel. King v. B&B Inv. Grp., Inc.*, 329 P.3d 658, 670 (N.M. 2014) (quoting *Cordova v. World Fin. Corp. of N.M.*, 208 P.3d 901, 907 (N.M. 2009)).  In other words, there must be "a determination that the one-sidedness of [a contract] is *unfair and unreasonable*" for a finding of unconscionability—as "*[g]ross unfairness* is a bedrock principle of [the] unconscionability analysis." *Peavy*, 470 P.3d at 222 (emphasis added) (quotation omitted). "The test for substantive unconscionability … simply asks whether the contract term 'is grossly unreasonable and against [New Mexico's] public policy under the circumstances.'" *King*, 329 P.3d at 670 (quoting *Cordova*, 208 P.3d at 909).[13]

---

[11] *See also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550 (6th Cir. 2018) (commenting that, in construing contracts, courts are not "the 'fairness police'" and "[i]t is simply not [the court's] job to rescue parties from the unintended consequences of complexity, sloppy drafting, or bad negotiating"—and that "[t]he time to close loopholes is in the offices of transactional lawyers, not in the courts").

[12] "Procedural unconscionability," in contrast to substantive unconscionability, "considers the factual circumstances of a contract's formation." *Id.*

[13] *See, e.g., id.* at 662, 668-72 (holding that "it is grossly unreasonable and against public policy to offer installment loans at 1,147.14 to 1,500 percent interest"—in a case in which payday lenders offered, through "take-it-or-leave-it" adhesion contracts, such "usurious" interest rates "primarily to less-educated and financially unsophisticated individuals" who were "clearly among the most financially distressed people in New Mexico"); *Peavy*, 470 P.3d at 222 (observing that "New Mexico conscionability case law has consistently found arbitration agreements to be unfairly and unreasonably one-sided when they unjustifiably require the non-drafting party to arbitrate its likeliest claims, while allowing the drafting party to pursue its likeliest claims through litigation"); *id.* at 221 (further observing that, although the contract may be analyzed "on its face" for unconscionability, "[t]he party alleging unconscionability bears the burden of proving that a contract is unenforceable on that basis").

### B.  Attorneys' Fees Must Be Reasonable and Necessary

"Normally, where the court is merely enforcing a contractual provision authorizing attorneys' fees, the fees are routinely awarded and the contract is enforced according to its terms." *Simplot v. Chevron Pipeline Co.*, 563 F.3d 1102, 1119 (10th Cir. 2009) (quoting *United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc.*, 834 F.2d 1533, 1548 (10th Cir. 1987)).

There appears to be "no New Mexico case stating that contractual attorneys' fees must be reasonable where the contract does not expressly require that such fees be reasonable." *Pedroza v. Lomas Auto Mall, Inc.*, 716 F. Supp. 2d 1031, 1040 (D.N.M. 2010) (Browning, J.).  Nevertheless, it seems that "the Supreme Court [of New Mexico] would adopt th[e] majority rule and read the requirement of 'reasonable and necessary' into contractual attorneys-fee clauses"—"even when the contract under which they are awarded does not, on its face, require them to be reasonable." *Id.* at 1040-41 (reviewing cases).  "In New Mexico, a court determines the reasonableness of attorney fees by applying the … factors found in Rule [of Professional Conduct] 16-105." *Id.* (quoting *Rivera-Platte v. First Colony Life Ins. Co.*, 173 P.3d 765, 791 (N.M. Ct. App. 2007)). "The relevant factors are:"

> (i) the time and labor required—the novelty and difficulty of the questions involved and skill required; (ii) the fee customarily charged in the locality for similar services; (iii) the amount involved and the results obtained; (iv) the time limitations that the client or the circumstances imposed; and (v) the experience, reputation, and ability of the lawyer or lawyers performing the services.

*Id.* (quoting *Mountain Highlands, LLC v. Hendricks*, No. CIV 08-0239 JB/ACT, 2010 U.S. Dist. LEXIS 40408, 2010 WL 1631856, at *4 (D.N.M. Apr. 2, 2010) (Browning, J.)); *see also* N.M. R. Prof'l. Cond. 16-105; *Simplot*, 563 F.3d at 1119 (10th Cir. 2009) (observing that "the trial court's role with respect to contractual attorneys' fees is to determine if the claimed fees are inequitable

or unreasonable" and that the payor "bears the burden of proof" in showing that a fee award is "unreasonable or inequitable" (bracket and quotations omitted)); *Western States*, 834 F.2d at 1549 (observing that "if the claimed fees are inequitable or unreasonable," the trial court "has discretion to deny or reduce the fee award"—but "is not responsible for independently calculating a 'reasonable' fee"); *Calderon v. Navarette*, 800 P.2d 1058, 1059-60 (N.M. 1990) (observing that the trial court "has broad discretion in awarding attorney fees").

## IV. DISCUSSION

As an initial matter, the Court finds that the parties entered into a binding settlement agreement on January 13, 2022, *see supra* Section I(B), and that the Court "has the power to summarily enforce [this] agreement," *Hardage*, 982 F.2d at 1496. The Court further finds that this January 2022 settlement agreement requires Defendants to pay Plaintiff $145,000 and the parties to dismiss all of their underlying liability claims. *See supra* Section I(B). Furthermore, this January 2022 settlement agreement requires the Court to determine whether, under the parties' June 2019 lease agreement, (1) Defendant Grandview must indemnify Plaintiff for its reasonable legal fees and costs in this litigation and (2) if so, how much (up to $55,000). *See id.*

### A. Defendant Grandview Must Indemnify Plaintiff

The Court holds that the June 2019 lease agreement requires Defendant Grandview to indemnify Plaintiff. As noted above, this lease agreement requires Defendant Grandview to "indemnify [Plaintiff] from any and all … costs and expenses, including attorney's fees, resulting from *any* … nonfulfillment of *any*" of Defendant Grandview's lease agreement obligations. Agreement at ¶ 10 (emphasis added). Furthermore, this lease agreement expressly states that Defendant Grandview "leases to [Plaintiff]" certain premises for Plaintiff's "outdoor advertising structure[s]" for "a term of Three (3) years commencing on June 1, 2019." Agreement at 1. In

10

addition, as Defendants concede, this agreement contains no express langue stating the Defendant Grandview could terminate this lease early.  ECF 42 at 2-3.  Furthermore, as Defendants also concede, "on or about January 28, 2021"—and over Plaintiff's objections—"[Defendant] Grandview instructed [Defendant] S&A to dismantle Lamar's Billboards and place them into storage," which Defendant S&A did.  *Id.* at 5.  Consequently, the Court concludes that Defendant Grandview did not fulfill its June 2019 lease agreement obligation to allow Plaintiff to maintain its outdoor advertising structures on Defendant Grandview's property for the required three-year period.

Defendant Grandview contends that—"based on an oral or implied-in-fact agreement that *supplemented* the [June 2019] lease[]"—Defendant Grandview was not obligated to allow Plaintiff to keep its advertising structures on the property for the entire three-year period.  ECF 42 at 12 (emphasis added).  But in its role of enforcing the parties' January 2022 settlement agreement, the Court finds that Defendant Grandview has not "come forward with [sufficient] evidence," *id.* at 13, establishing that this June 2019 lease agreement was indeed modified in such a manner.  *See*, *e.g.*, ECFs 42 at 2-6, 12-13; 42-1 at 1-5 (Declaration of Defendant Grandview's owner expressing, *inter alia*, his belief that, based on the parties' previous lease agreements under a different contract that Plaintiff had inherited from the YESCO advertising company, "[he] had the right to terminate the [June 2019] lease agreement[] when [he] did"—but also confirming that "[he] did not read" the lease agreement).[14]  In summary judgment or trial proceedings, Defendants could have more

---

[14] *See also Smith*, 650 P.2d at 829 (noting that a party is generally "presumed to know the terms of the agreement, and to have agreed to each of its provisions in the absence of fraud, misrepresentation or other wrongful act of the contracting party"); *Superior Concrete Pumping, Inc. v. David Montoya Constr., Inc.*, 773 P.2d 346, 349 (N.M. 1989) (observing that, generally, "an antecedent agreement" will not "merge[] into the more recent contract" unless "it is plainly shown such was the intent of the parties"); *Powers v. Miller*, 984 P.2d 177, 179 (N.M. Ct. App. 1999) (observing, *e.g.*, that "evidence of rescission of a written contract by a subsequent parol agreement must be clear, positive and above suspicion" and that "[t]he party seeking to reform a writing" bears the burden of proof by "clear and convincing evidence" (quotations omitted)).

fully and more appropriately addressed this issue—which almost surely would have been an important consideration in any ultimate liability determination. Defendants, however, chose to forgo such proceedings by entering into a settlement with Plaintiff.

The Court further concludes that the attorney's fee provision is not unconscionable. As noted, "[u]nless there is an *affirmative showing* of *mistake*, *fraud* or *illegality*, the fact that some of the terms of [an] agreement resulted in a hard bargain or subjected a party to exposure of substantial risk, does not render a contract unconscionable." *Builders*, 134 P.3d at 798 (emphasis added) (quotation omitted). Defendants, however, have not made such an "affirmative showing of mistake, fraud or illegality." Instead, Defendants essentially argue that the "lack of mutuality" of the fee provision is unconscionable—as it allowed Plaintiff to "stack the deck in its own favor," including by limiting Defendant Grandview's ability to challenge the lease termination provision. ECF 42 at 7-12 (citing, *inter alia*, *Peavy*, 470 P.3d at 221-26).

The Court emphasizes that a lease agreement fee provision "is not substantively unconscionable merely by way of its one-sidedness." *Peavy*, 470 P.3d at 222. Rather, the question is whether the fee provision is "grossly unreasonable and against [New Mexico's] public policy under the circumstances.'" *King*, 329 P.3d at 670 (quoting *Cordova*, 208 P.3d at 909); *Peavy*, 470 P.3d at 222. And, as Defendants concede, "no New Mexico court has ever ruled that a one-sided fees provision is unconscionable." ECF 42 at 8-10. Furthermore, Defendants have not presented this Court with any binding authority, or other information or evidence, that would require the Court to conclude that this fee provision between two sophisticated businesses is "grossly unreasonable" and against New Mexico's public policy and thus unconscionable. *See* ECF 42 at 7-12; *Peavy*, 470 P.3d at 221 (observing that "[t]he party alleging unconscionability bears the burden of proving that a contract is unenforceable on that basis"); *see also Bowlin's, Inc. v. Ramsey*

12

*Oil Co.*, 662 P.2d 661, 669 (N.M. Ct. App. 1983) (observing that "most who have used [the unconscionability defense] successfully" were "consumer litigants [who] have been poor or otherwise disadvantaged"—and that "courts have not generally been receptive to pleas of unconscionability by one merchant against another" (quoting Uniform Commercial Code (2d ed. 1980), p. 149) (citing § 55-2-302, N.M.S.A.1978)).[15]

### B.  Plaintiff Incurred at Least $55,000 in Indemnifiable Fees and Costs

The Court begins by noting that Defendant Grandview "bears the burden of proof" in showing that a fee award is "unreasonable or inequitable," and that "[n]ormally, where the court is merely enforcing a contractual provision authorizing attorneys' fees, the fees are routinely awarded and the contract is enforced according to its terms." *Simplot*, 563 F.3d at 1119 (quotation omitted).  In addition, although the Court has discretion to "reduce the fee award," the Court "is not responsible for independently calculating a 'reasonable' fee." *Western States*, 834 F.2d at 1549; *Calderon*, 800 P.2d at 1059-60 (observing that the trial court "has broad discretion in awarding attorney fees").

In light of these standards, the Court concludes that Defendant Grandview has not met its burden to show that a fee award of $55,000 is unreasonable or inequitable.  Although Plaintiff was billed for 120.5 hours more of attorney time overall than were Defendants (186.9 hours compared to 66.4), this disparity alone does not render Plaintiff's counsel's billing unreasonable.  Such imbalances are frequent in litigation, as attorneys respond to varying pressures occasioned by

---

[15] Moreover, even if the one-sided fee provision *were* unconscionable, the Court is not necessarily required to strike the provision from the lease agreement—as the Court also has the option to "*limit [the provision's] application … as to avoid any unconscionable result.*" *King*, 329 P.3d at 675 (emphasis added) (quotation omitted).  But Defendants have not argued why, if the provision were unconscionable, the Court could not merely limit the *one-sidedness* aspect of this provision (as opposed to striking the entire provision from the lease agreement)—so that the provision would apply equally to both contracting parties.  *See* ECFs 42, 52.  Neither have Defendants argued that—based on Plaintiff's nonfulfillment of one or more of its lease agreement obligations—Defendant Grandview should instead be entitled to fees under such a de facto "two-sided" fee provision.  *See* ECFs 42, 52.

factors such as the language of fee agreements, the clients' capacity to pay, how much time gets written off, and which party bears the principal burden of proof.  After reviewing the billing information submitted by Plaintiff's counsel, the Court was not left with the impression that counsel overworked the file, exalted form over substance, or spent unreasonable amounts of time with any individual litigation task.

Turning to the subject of Plaintiff counsel's billing to litigate Defendants' motion to dismiss, the Court begins with the obvious: this was a motion that *Defendants* filed.  They were under no obligation to file the motion *at all*, particularly considering (1) the motion did not seek dismissal of all claims in the Complaint, and (2) how soon the case settled thereafter.  Filing such a motion, therefore, was entirely discretionary and—under the peculiar facts of this case—a risky decision because it compelled one's litigation adversary to burn attorney time researching and filing a response and preparing for and attending a hearing on the matter.  With the fee-shifting provision of the lease looming large since the inception of this litigation, filing a discretionary motion that would generate attorney's fees on both sides was perilous, particularly considering that Defendant Grandview now ends up paying the fees for counsel on both sides.

In addition, notwithstanding the Court's comment that "a byproduct of Plaintiff's haste in filing this case" was that the Complaint contained rather "thin and summary allegations about how and to what extent the signs and their supporting structures were damaged and destroyed," the Court did hold that "the factual allegations in the Complaint [were] sufficient—[albeit] just barely—to withstand the [motion to dismiss]."  ECF 24 at 11.  In other words, Plaintiff *prevailed* on the motion despite the Court's criticism of its Complaint.  Furthermore, the Court is less than convinced that Defendants would have foregone filing a motion to dismiss altogether even if the Complaint had included a more detailed description of billboard damages—as Defendants asserted

14

other arguments and defenses in their briefing that still could have been raised.[16]  For these reasons, the Court will not excise from the fees demanded by Plaintiff's counsel those associated with defending against Defendants' motion to dismiss.

Two points on which the Court does agree with Defendant Grandview arise from the fees charged for the associate attorney's participation at the settlement conference and the billing rate for the associate attorney.  First, the Court finds that the associate's participation at the settlement conference is not reimbursable because it was superfluous and inessential.  While the settlement conference was no doubt an important learning opportunity for the associate, Plaintiff's lead counsel's participation was plainly sufficient.  Requiring Defendant Grandview to underwrite the professional education of Plaintiff's counsel's associate would be inequitable under the circumstances.  Second, the Court's general awareness of the prevailing billing rates in New Mexico suggests that $275/hour is not reasonable for an associate.  Nonetheless, as shown below, this is a pyrrhic victory for Defendant Grandview because even reducing the associate's rate to $175/hour would not bring the total fees and expenses beneath $55,000.

Even if the Court reduced Plaintiff's fee demand by (1) $1,690.94 for the associate's attendance at the settlement conference; (2) $4,500 for the associate's overly ambitious billing rate (45.0 hours x $100/hour); and (3) the remaining $3,239.49 in specifically-identified fees ($1,859.23 + $1,097.63 + 282.63), *see supra* Section II(B), more than $55,000 in fees and costs remains that Defendants have not established is unreasonable or inequitable.  Said differently, the Court finds that Plaintiffs have incurred *at least* $57,339.62 ($66,770.05 – $1,690.94 – $4,500 –

---

[16] *See*, *e.g.*, ECF 5 at 5-6 (arguing that—as a matter of law—"disassembly of a billboard" cannot "destroy[] or materially damage[] the billboard"), 7-8 (arguing that Plaintiff could not recover damages for the destruction of its "permits and non-conforming rights"), 8-9 (arguing that Defendant Grandview's "affirmative defense" of "abat[ing] a trespass" "entitled [it] to remove the billboards" and precluded Plaintiff from "stat[ing]a claim for destruction of property"); 10-11 (arguing that Plaintiff's "demand for punitive damages must be dismissed").

$3,239.49) in reasonable fees and costs.  Defendant Grandview must therefore indemnify Plaintiff in the amount of $55,000 for Plaintiff's fees and costs incurred in this action.

## V.   CONCLUSION

For the foregoing reasons, the Court holds that, pursuant to the parties' January 2022 settlement agreement and June 2019 lease agreement, Plaintiff is entitled to $55,000 in attorney's fees and costs.

**IT IS THEREFORE ORDERED** that the parties shall file closing documents dismissing their respective claims no later than **June 30, 2022**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Attorney's Fees [ECF 41] is **GRANTED** and Defendant Grandview shall pay to Plaintiff's counsel $55,000 in costs and fees no later than **June 30, 2022**.

**SO ORDERED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*